### Robert H. Valeo v. Koreen Rose Valeo

[322 A.2d 306]

No. 238-73

Present: Barney, C.J., Smith, Keyser and Daley, JJ., and Shangraw, C.J. (Ret.)

Opinion Filed July 8, 1974

*Dick, Hackel & Hull,* Rutland, for Plaintiff.

*Patrick R. Berg, Esq.,* Vermont Legal Aid, Inc., Rutland, and *Anita C. Lobo, Esq.,* Rutland, of counsel, for Defendant.

**Smith, J.** This is a petition for the change of the custody of the two minor children of the parties from their mother to the father. On September 9, 1971, the appellant, Koreen Rose Valeo, was granted a divorce from the appellee, Robert H. Valeo, on the grounds of intolerable severity after an uncontested proceeding. The custody of the two minor daughters of the couple was awarded to the appellant, with reasonable visitation rights to the appellee. The two children involved are Pamela, aged thirteen at the time of the hearing on the petition below, and Nancy, who was then aged eight. Both are in school in Manchester, Vermont, and are doing well.

At the time of the divorce Mr. Valeo was deeply in debt, unable to care for his children, and believed his wife to be a good mother.

The petition to modify the order, brought pursuant to 15 V.S.A. § 292, alleged that because of a substantial change in material circumstances the custody of the two children should be changed. In this petition Mr. Valeo alleged that the former Mrs. Valeo was openly living with another man and that she was then pregnant by such man. It was further alleged that Mr. Valeo had since remarried and was now able to maintain a suitable and loving home for his children, and that it would be in the best interest of the children for their care, custody, and control to be entrusted to him. The order of the lower court changed the custody of the two children from Mrs. Valeo to the petitioner.

The law that is applicable to a petition for change of custody has been well stated by Justice Keyser in *Gokey* v. *Gokey*, 127 Vt. 334, 248 A.2d 738 (1968). On page 335 of that opinion the standards are set forth, and we quote:

> After granting a divorce the court upon petition of a parent has the authority to annul, vary or modify the order for the care and custody of minor children as it deems expedient. 15 V.S.A. § 292. It is the settled law of this court that to warrant the modification of a custody order the petitioner must show a substantial change in the material circumstances since the date of the decree. *Buckminster* v. *Buckminster*, 38 Vt. 248, 250; *McKinney* v. *Kelley*, 120 Vt. 299, 302, 141 A.2d 660; *Miller* v. *Miller*, 124 Vt. 76, 79, 197 A.2d 448. It is equally well settled

that it is the welfare of the child which in the last analysis is determinative in a custody matter. *McKinney* v. *Kelley, supra,* at page 302, 141 A.2d 660. Change of circumstances is not a ground for modification of a custody order. It is a prerequisite. *Ibid.* Thus, the petitioner must first prove a "substantial change in the material circumstances" and next prove that under the new conditions a change of custody is in the best interests of the child.

This Court reaffirmed those standards last year. *Gerety* v. *Gerety,* 131 Vt. 396, 306 A.2d 693 (1973).

The first attack on the amendment to the original divorce decree by the appellant is that the lower court did not comply with the standards in *Gokey* v. *Gokey, supra,* in that it did not find that there was in fact a substantial change in the circumstances of the parties. However, the real thrust of this argument seems to be that the lower court did not "sort out" the evidence on change of circumstances from that upon which the court based its determination that a change of custody would be in the best interests of the children.

It is true, as we have seen in *Gokey* v. *Gokey, supra,* that change of circumstances is only a prerequisite for a modification of a custody order, and the petitioner must next prove that under the new circumstances a change of custody would be in the best interests of the children. But this requisite is only on the order of proof which is the burden of the petitioner, and the lower court is not bound by this rule in the making of the findings of fact.

In the present case the lower court, in its first five findings, set forth the facts regarding the circumstances of the parents and the children at the time of the original decree. Found also were the present ages and school progress of the children, the reasons why the appellee, the father, did not seek custody at the time of the original divorce, and the fact that the appellant was a good mother, and remains so, in the sense that the children were well fed and clothed, and affectionately regarded.

Finding 6 sets forth, however, that "Other circumstances have materially and substantially changed. . . ." The changes in circumstances since the divorce which were found are set forth in Findings 6 to 13. Technical arguments have been advanced that certain of these findings, individually considered,

are not changes at all. For example, Finding 7, to the effect that the area in which the appellant and the children live in East Manchester, Vermont, is in a neighborhood with considerable minor criminal activity, is characterized by the appellant as a long-standing, accurate description, valid prior to the divorce. However, even if this characterization be correct and the neighborhood has not changed, circumstances have changed if petitioner now resides in a better environment. Other attacks of this nature, focusing on individual findings, also lack merit when Findings 6 to 13 are considered cumulatively and certainly do not constitute grounds for a reversal.

In Finding 6 the lower court found that Mr. Valeo has remarried, and lives in Pittsford, Vermont, with his present wife, a school teacher, and her two children by a former marriage. Mr. Valeo's financial condition has improved, and his new wife is willing and well qualified to care for the Valeo children. The two sets of children have gotten along well together in visits to the home in Pittsford.

Finding 8 refers to the atmosphere of the home in which the children of the parties are presently living. The court found that Mrs. Valeo has had at least two men living with her since the divorce. One of the two, a David O'Neill, has now been living in the home for some time, admittedly cohabiting with Mrs. Valeo, although himself married. O'Neill was found to have a police record and to possess violent tendencies.

Finding 9, to which the appellant particularly objects, is that at the time of the hearing both O'Neill and the appellant admitted that he was the father of the expected child, and that this fact is known to Pamela.

Finding 10 is to the effect that although the children are Catholic no effort is made by the appellant to see that they get a religious education, while, on the contrary, when visiting the father's new home they are regularly sent to Sunday School.

Finding 11 states that while the physical needs of the two children are taken care of in their present home they would be better off in the custody of the father. "The moral atmosphere in the present custody is virtually nonexistent, with open, gross, and repetitive adultery being freely admitted and defended."

Finding 12 is to the effect that the older girl, Pamela, desires to remain with her mother, because she believes that her father has shown insufficient interest in her. However, she likes her father and gets along with her father's new family, and does not want O'Neill for her permanent father.

Finding 13 is in the nature of a negative finding that, as to the accusations made by the appellant that Mr. Valeo has had sexual relations both with the appellant and another woman since the divorce, the court finds such accusations to be untrue and concludes that, even if true, still "the general atmosphere of the petitioner's new home and new marriage is clearly vastly superior to the circumstances under which these children are now living."

Finding 14 is merely that a change of school would not be disadvantageous to the children, particularly because the present wife of Valeo, with her training and background, could be of assistance to the children.

Finding 15 we quote in full because we believe it answers the objection of the appellant that the court did not find both a substantial change in the material circumstances of the parties and a change of custody to be in the best interests of the children. "The foregoing findings reflect a substantial change in the material circumstances prevailing when custody of these children was originally awarded. They also indicate, and we so find, that a change of custody to the father, under these new conditions, is in the best interests of the children." By such finding the lower court in essence found that there was a change in material circumstances since the date of the original divorce decree, and that such material circumstantial changes also supported a modification of the original order relating to custody. We find no conflict with *Gokey* v. *Gokey* in the consideration by the court of the same evidence on both questions presented.

The next objection raised by the appellant is that the findings of fact are not supported by the evidence. A careful search of the record establishes that they are not clearly erroneous; therefore they must stand, V.R.C.P. 52; *Gerety* v. *Gerety, supra*, 131 Vt. at 402, and be construed to support the judgment. *Rogers* v. *W. T. Grant Co.*, 132 Vt. 485, 321 A.2d 54 (1974).

The appellant complains that the court should have made additional findings based upon the evidence she offered. However, the weight to be given her testimony was for the court; further, any modifying evidence is excluded when reviewing findings under the clearly erroneous test. V.R.C.P. 52; *Wilson v. Hilske*, 132 Vt. 506, 321 A.2d 16 (1974). Moreover, every item of testimony need not be processed into a finding. "The law does not contemplate that the trial court should re-state the evidence nor report all the subordinate facts." *McKinney v. Kelley*, 120 Vt. 299, 303, 141 A.2d 660 (1957), *cert. denied*, 356 U.S. 972 (1958).

■ The appellant argues that the lower court was in error in finding that the appellant was an unfit mother to have custody on the grounds of alleged immoral conduct without a finding that there was a direct detrimental relationship between the immoral conduct of the mother and the welfare of the children. The portions of Findings 11 and 13, quoted earlier in this opinion, show that the lower court found that the immoral atmosphere in which the children are now being raised would not be as conducive to the present and future welfare of the children as would a change of custody and residency to the father. We think that there can be no question that a court, in determining a child custody matter, has the duty to consider the future harmful effects of the environment in which it is to be brought up, both as to the moral, as well as the physical, upbringing of the child. "There can be no fixed standards to determine what constitutes a substantial change in material circumstances. The court is guided by a rule of very general application that the welfare and best interests of the children are the primary concern in determining whether the order should be changed." *Gerety v. Gerety, supra,* 131 Vt. at 402; *Miles v. Farnsworth,* 121 Vt. 491, 495, 160 A.2d 759 (1960). It is consistent with this primary concern that a change of custody petition need not be denied until the time a petitioner can conclusively prove that harm to the children has already occurred.

■ The appellant cites a number of cases from other jurisdictions to support her claim that her rights of privacy were invaded as to her sexual conduct. The simple answer to this claim is that the appellant made no objections to the

questions asked her relative to her relations with other men since her marriage, the only question before the lower court was that of the welfare of the children, and the evidence of the conduct of the mother was received only as to its effect upon the welfare of the children.

The appellant also asserts that the lower court abused its discretion in receiving evidence of the past criminal conduct of Mr. O'Neill. This evidence also came in without objection. Moreover, the cases cited to us by the appellant have to do with 12 V.S.A. § 1608, which governs which criminal convictions are admissible to affect the credibility of a witness. These cases are not relevant to the situation in the case below.

■ Whether the testimony of the child, Pamela, that she wished to remain with her mother should have been given more consideration by the court below is the final issue raised by the appellant meriting discussion. Although the court did find such a desire to be a fact, it, in effect, determined that to fulfill the wishes of the child would not be beneficial to her future and best interests. Wishes of a child found to be opposed to its own future welfare must yield. *Raymond* v. *Raymond,* 120 Vt. 87, 95, 132 A.2d 427 (1957).

The decisions that must be made by a court on petitions for the change of custody of children require delicate and often painful considerations by a court. The result is almost inevitably hard to accept by the parent who must relinquish or be unable to obtain custody and, at times, to the children involved as well. But it is for the trial court to determine whether a change of custody is desirable under the altered circumstances.

> This determination often involves a balancing of the advantages and disadvantages which would result in granting custody to one or the other of the two parents. *Raymond* v. *Raymond,* 120 Vt. 87, 95, 132 A.2d 427, 431. Thus it becomes a question of judgment and sound discretion, and if the county court does not abuse its discretion in the determination, there is nothing for this Court to review.

*McKinney* v. *Kelley, supra,* 120 Vt. at 302–03.

*Judgment affirmed.*