### In re B.F., Juvenile and In re S.A., Juvenile

[595 A.2d 280]

Nos. 88-544 & 89-010

Present: Allen, C.J., Peck and Dooley, JJ., and Barney, C.J. (Ret.), Specially Assigned

Opinion Filed June 14, 1991

*Jeffrey L. Amestoy*, Attorney General, Montpelier, and *Alexandra N. Thayer*, Assistant Attorney General, Waterbury, for Plaintiff-Appellant.

*Walter M. Morris, Jr.*, Defender General, and *Robert Sheil*, Juvenile Defender, Montpelier, for Defendants-Appellees.

**Allen, C.J.** The Department of Social and Rehabilitation Services (SRS) appeals from two juvenile court orders restraining it from transporting juveniles in restraints. SRS claims that the juvenile courts exceeded their authority in promulgating the orders. We agree and vacate the orders.

Based on a finding of delinquency, legal custody of S.A. was transferred to SRS in 1986. S.A. came before the juvenile court in June 1988 for review of the disposition order. During the course of this review action, which was continued several times, S.A. was placed at the Woodside Juvenile Rehabilitation Facility. A youth placed at Woodside is transported to and from court appearances in restraints. The juvenile court, upon re-

suming its dispositional review on November 2, 1988, provided in its review order that SRS not transport S.A. with either leg-irons or handcuffs. SRS appeals from this order.

B.F., originally in SRS custody as a child in need of care or supervision, was found to be delinquent and was continued in SRS custody pending disposition. During the course of the disposition hearings, B.F. was placed at Woodside and was transported to and from the courthouse in restraints. The juvenile court heard argument and took testimony regarding the appropriateness and necessity of this manner of transport. It subsequently issued a protective order pursuant to 33 V.S.A. § 5534* prohibiting SRS from using "leg irons, shackles or similar restraining devices when transporting B.F. to and from court." The court, conducting the inquiry required by § 5534(2), found that the practice of using restraints was "most harmful to the child's self-esteem. The child himself testified that he was humiliated by walking on the street and through the corridors of the public court building in chains." Further, the court found that "[g]iven B.F.'s unfortunate history, and his apparently low self-esteem, the Department of Social and Rehabilitation Services' continuing use of chains and restraints on this child is not only very harmful but will also tend to defeat the execution of any therapeutic disposition to be made." SRS appeals from this protective order.

 Addressing the dispositional review order concerning S.A. first, dictating the manner in which SRS was to transport S.A. was clearly beyond the juvenile court's authority. The juvenile court is a court of "special and very limited statutory powers." *In re M.C.P.*, 153 Vt. 275, 302, 571 A.2d 627, 642

---

* 33 V.S.A. § 5534 provides:

> On petition of a party or on the court's own motion, the court may make an order restraining or otherwise controlling the conduct of a person if:
>
> (1) An order of disposition of a delinquent child or a child in need of care or supervision has been or is about to be made in a proceeding under this chapter; and
>
> (2) The court finds that such conduct is or may be detrimental or harmful to the child, and will tend to defeat the execution of the order of disposition made or to be made; and
>
> (3) Notice of the petition or motion and the grounds therefor and an opportunity to be heard thereon have been given to the person against whom the order is directed.

(1989); *In re K.H.*, 154 Vt. 540, 542, 580 A.2d 48, 49 (1990). In establishing juvenile procedures, the Legislature sought to achieve a balance between the authority of the juvenile court and the authority of the legal custodian. *In re G.F.*, 142 Vt. 273, 280, 455 A.2d 805, 809 (1982); see also *In re J.S.*, 153 Vt. 365, 371, 571 A.2d 658, 662 (1989) (statute governing juvenile procedures "allocates power between the legal custodian and the juvenile court"). This balance dictated our conclusion in *G.F.* that SRS, as legal custodian of a child, has the authority to determine where that child shall live. 142 Vt. at 281, 455 A.2d at 809. While the juvenile court retains the limited authority to accept or reject a placement recommendation of the legal custodian, it cannot include in its disposition order a specific placement. "[T]he juvenile court has no authority to dictate where and with whom a juvenile should live . . . ." *Id.*; see 33 V.S.A. § 5502(a)(10) (giving person with legal custody extensive authority over the minor). It is likewise within SRS's authority, as legal custodian of a child, to determine the most appropriate manner of transporting that child. Nothing in the statutory scheme or our case law persuades us that in the balance struck between the juvenile court and the legal custodian, the determination on how to transport a child lies within the authority of the juvenile court. Accordingly, that portion of the dispositional review order dictating the manner of transport is vacated.

The order concerning B.F. was not part of a dispositional review order, rather it was a protective order issued pursuant to § 5534. Yet the balance struck between the juvenile court and the legal custodian is not meant to be upset by this protective order provision. It is plain from our decisions that the juvenile court, lacking authority to order specific placement of a child, cannot achieve the same end under the guise of a protective order. In *In re B.L.*, 149 Vt. 375, 543 A.2d 265 (1988), a child filed a petition for a protective order to block SRS's intended placement of him. The juvenile court granted the protective order on an interim basis and required SRS to seek modification of the original disposition order, which it subsequently granted. On the child's appeal, this Court upheld SRS's placement yet vacated the juvenile court's protective order and its requirement that SRS seek modification. SRS's placement was upheld because SRS, as legal custodian, had the authority to make this

placement without judicial approval. *Id.* at 376, 543 A.2d at 266. The juvenile court's orders concomitantly were vacated because it lacked authority to issue them. *Id.* at 376–77, 543 A.2d at 266. This holding was reaffirmed in *J.S.*, 153 Vt. at 371, 571 A.2d at 662 ("juvenile court lacked the authority to require SRS to obtain court approval for the modification of a disposition order to effectuate a change in the placement of a child within its custody"); see also *In re A.K.*, 153 Vt. 462, 463, 571 A.2d 75, 76 (1990) (juvenile court appropriately denied parents' protective order petition "on the grounds that it had no authority to interfere with SRS's lawful placement of a child in its custody").

■■ In line with these authorities, the order in B.F. is invalid if viewed as an attempted exercise of authority, through the guise of a protective order, over the manner in which SRS transports juveniles. Further, if the order is viewed as an attempt to prohibit conduct that is "detrimental or harmful to the child, and will tend to defeat the execution of the order of disposition made or to be made," § 5534(2), it is unreasonable. As is clear from the text of this provision, a finding that conduct is detrimental or harmful to a child is not enough to warrant a protective order. The juvenile court has not been granted the power to intrude into SRS's custody whenever it perceives harmful or detrimental conduct. Rather, its power is limited to prohibiting such conduct that tends to defeat execution of the court's disposition order. SRS's manner of transport cannot reasonably be found to tend to defeat the execution of a disposition order. Accordingly, the protective order is vacated as an abuse of discretion. *J.S.*, 153 Vt. at 371, 571 A.2d at 661.

■■ We recognize that the juvenile court is invested with the same authority over courthouse premises that other courts possess. "[T]he courtroom and courthouse premises are subject to the control of the court." *Sheppard v. Maxwell*, 384 U.S. 333, 358 (1966); see *State v. Robillard*, 146 Vt. 623, 630, 508 A.2d 709, 714 (1986) (trial court has power, within constitutional limits, to close courtroom to the public); *State v. Ahearn*, 137 Vt. 253, 269–70, 403 A.2d 696, 706–07 (1979) (trial court has power to restrain defendant). The juvenile court has the authority to proscribe the use of restraints on the juveniles while they are on courthouse premises. We vacate the current orders because they reach beyond this.

*Vacated.*